IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

ADRIAN C. GARDINER,

Case No.:  19-cr-00117-wmc

Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

I.      Introduction

The defendant, Adrian Gardiner, is a predator.  He traveled from Indiana to Wisconsin multiple times to sexually assault a then-12-year-old girl, recorded the sexual assaults on at least two occasions, and then sent one of the videos to the child.  Having been caught and convicted of producing child pornography, in violation of 18 U.S.C. § 2251(a), he now faces sentencing by this Court.  The guidelines for his offenses are 360 months to life in prison, capped at the maximum statutory sentence for the count of conviction: thirty years.  For the reasons below, the government believes a sentence of 20 years is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a).

II.     Factual Background

On July 30, 2019, law enforcement responded to a foster home in Cottage Grove. The foster mom reported that approximately a week prior, her 12-year-old foster child (Minor A) had snuck out to meet a 45-year-old man she had met on the internet.  (R. 35,

¶ 7).  She also reported that days earlier, she spoke to this man when he called the residence and told him that Minor A was 12 years old.  (Id.).

Officers spoke to Minor A who told them that she met the defendant online.  (R. 35, ¶ 9).  The victim's and the defendant's online profile indicated they were each 18.  (Id.). They first met sometime before July 4 when the defendant traveled from Indiana to Cottage Grove, picked up Minor A from her residence at approximately 3:00 a.m., drove to a park, and sexually assaulted her.  (Id.).  Following the sexual activity, the defendant slapped her leg, called her stupid and threatened to "whoop her ass."  (Id.).  Similar activity took place about a week later.  (Id., ¶ 10).

The defendant drove to Wisconsin and sexually assaulted the minor on numerous other occasions.  Hotel records indicate he rented a room on May 10, June 23, July 2, and August 13.  (R. 35, ¶ 20).  And not every assault occurred in a hotel.  Sometimes it was in a park or on the side of the road.  (Id, ¶ 22).  In addition to sexually assaulting Minor A, the defendant gave her alcohol and threatened her family.  (R. 35, ¶ 18).

On July 2, 2019, the defendant took Minor A to a hotel where he sexually assaulted her.  (R. 35, ¶ 15).  He then sent a video made of the assault to Minor A's iPad where law enforcement agents found it.  (Id.).  On August 13, the defendant took Minor A to the motel where the defendant again sexually assaulted her.  Law enforcement agents found recordings of this assault on the defendant's phone.  (Id., ¶ 23).

One time the defendant brought three other males with him to Wisconsin, who also sexually assaulted Minor A.  (R. 35 ¶ 11).  The defendant, angry when he heard

about the sexual conduct between Minor A and the others, pushed Minor A into a TV set, then refused to take her home from a motel.  (Id., ¶ 11).

Following the defendant's arrest, the defendant called his mother and admitted not only knowing Minor A was 12 years old, but also to driving to Wisconsin to meet with her after learning her true age.  (R. 35, ¶ 21).  He admitted the same thing to law enforcement.  (Id., ¶ 22).

III.    Defendant's Objections to the Presentence Report

A.    Use of a Computer

The defendant objects to a two-level enhancement for use of a computer under USSG § 2G2.1(b)(6)(A) and (b)(6)(B).  (R. 32).  This Court routinely declines to include points for this section and the government anticipates it will follow that practice in this case.  A two-level reduction places the defendant's guideline range at 292-365 months, capped at the statutory maximum of 360 months.

B.    Repeat Offender

The defendant next claims he is not subject to a 5-level enhancement under USSG § 4B1.5(b)(1) for being a repeat and dangerous sex offender against minors because it is double counting the conduct in this case.  (R. 32).  The defendant's argument seems to focus primarily on the application of Section 4B1.5(a).  However, as noted in the PSR Addendum the defendant's enhancement is pursuant to (b)(1) which specifically includes conduct that occurred during the course of the instant offense.   The enhancement is therefore warranted.  *See e.g. United States v. Fox*, 926 F.3d 1275, 1279-1281 (11th Cir. 2019) (defendant's repeated sexual assault of single victim was sufficient to meet pattern of sexual activity and unrelated instances of prohibited sexual abuse

3

were not required).

IV.     Sentencing Argument

The government requests a below-guideline sentence of 240 months in custody. This sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a).  Nothing suggests a sentence lower than that is appropriate in this case.

A.      The Nature and Circumstances of the Offense

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses."  *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc) (citation omitted).  "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate."  *Id.* at 1207 (collecting authority).

This case is a perfect illustration of that.  As explained by Minor A's social worker, "[d]ue to the actions of Mr. Gardiner, [Minor A] has again learned that she cannot trust adults and she has also learned that she had value, or thought she had value, through prostitution."  (R. 39).  "[Minor A] will be impacted for life by the actions of Mr. Gardiner.  She has been sexually assaulted by at least three other adult men since the summer of 2019.  She has flashbacks of the sexual assaults and her ability to have healthy relationships has been greatly damaged."  (Id.).

When child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and perpetuated

because "the materials produced are a permanent record of the children's participation." *United States v. Ferber*, 458 U.S. 747, 759 & n.10 (1982).

While the defendant was convicted of one count, his conduct occurred numerous times over at least a two-month period.  It was not a single isolated event and a 20-year sentence reflects that.

B.     The History and Characteristics of the Defendant

While Minor A could not consent due to her age, her conduct with the defendant was also against her will.  (R. 35, ¶ 17).  She reported being afraid of him and going with him because she feared he would hurt her family if she did not.  (Id., ¶ 18).  Not only did the defendant sexually assault her, he brought three other males with him who also sexually assaulted her.  (Id., ¶  11).  After learning about this, the defendant got jealous, pushed Minor A into a television set, and refused to take her home.  (Id.).  Other times when the defendant was mad at her, he called her names, including "stupid" and "ho," and he threatened to beat her when she wanted to go home.  (Id., ¶ 9)

One of the most troubling aspects of this case, and one that speaks volumes about the defendant's character, is that once the defendant learned Minor A was only 12 years old, he continued to travel to Wisconsin to sexually assault her.  In late July, Minor A's foster mom told the defendant Minor A's age.  And yet the defendant returned and sexually assaulted Minor A at least twice after that date, including one time where he recorded the conduct.  When Minor A told him she was 12, he said he did not care – something he proved by his continued assaults of her after learning her age.

5

C.      The Need for the Sentence to Reflect the Seriousness of the Offenses, to
        Promote Respect for the Law, and to Provide Just Punishment

Congress's intent to treat offenses involving child pornography severely, and its

concern with below-Guidelines sentences, is evident in statutes such as 18 U.S.C.

§ 3553(b)(2), which permitted courts to depart below guideline ranges for such offenses

only in very limited circumstances.  Although § 3553(b)(2) is no longer a mandatory

limitation, in light of *Booker* concerns, the importance of sentencing courts'

consideration of Congress's legislative judgment remains.  *See, e.g.*, *United States v. Pugh*,

515 F.3d 1179, 1197-98 & n.12 (11th Cir. 2016) (citing detailed congressional findings

about the harm child pornography causes and recognizing that, "[i]n light of these

detailed legislative findings and numerous legislative enactments, we cannot help but

underscore the seriousness of this crime").

A 20-year sentence in this case reflects the seriousness of the offense, promotes

respect for the law, and provides just punishment.  The mandatory minimum of 15

years does not.  As the *Irey* court explained, "[a] person who traveled to another

country and took a single photograph of a 17-year-old engaging in an obscene pose by

herself would be guilty of violating the same statute and be subject to a mandatory

minimum sentence of 15 years in prison."  *Irey*, 612 F.3d at 1209.  Given the defendant's

conduct in this case, including traveling from Indiana to Wisconsin, assaulting Minor A

numerous times, and recording two of the assaults, his sentence should be  "more than

if all he had done was on a single occasion snap a single photo of a single, teenage child

in an obscene pose by herself."  *Id.*

D.     The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment

A 20-year sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 438 U.S. 84, 103 (2003).  The fact that the defendant will be subject to restrictions and supervised release if he gets out of prison does not offer any guarantee that he will not offend again.  *See Irey*, 612 F.3d at 1215 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism").  In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does."  *Id.* at 1216.

E.     The Need to Avoid Unwarranted Sentencing Disparities

A 20-year sentence would also avoid unwarranted disparities and be sufficient but not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a).  Notably, this Court sentenced Nicholas Kvatek who had an ongoing sexual relationship with a "willing" 15 year-old-girl to 18 years in custody and Gerardo Torres who recorded himself assaulting a 7-year-old and a 15-year-old to 20 years in custody.

Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant.  The examples referenced reinforce that a 20-year sentence is the appropriate sentence in this case.

7

V.      Conclusion

The defendant is a sexual predator who has abused his victim and recorded it on numerous occasions.  The Government respectfully requests that the Court impose a 20-year sentence of incarceration.

Dated:  <u>June 11, 2021</u>

Respectfully submitted,

TIMOTHY M. O'SHEA
Acting United States Attorney


By:      <u>                /s/                           </u>
ELIZABETH ALTMAN
Assistant United States Attorney