UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.                   Case No. 19-CR-117-WMC

ADRIAN C. GARDINER,        Madison, Wisconsin
                          March 25, 2021
             Defendant.    11:30 a.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF VIDEOCONFERENCE PLEA HEARING
HELD BEFORE THE HONORABLE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:

        Office of the United States Attorney
        BY: ELIZABETH ALTMAN
        Assistant United States Attorney
        222 West Washington Avenue, Suite 700
        Madison, Wisconsin  53703

For the Defendant:

        Tracey Wood & Associates
        BY: JOSHUA HARGROVE
        1 South Pinckney Street
        Suite 950
        Madison, Wisconsin  53703

Also Present:

        Adrian C. Gardiner, Defendant

CHERYL A. SEEMAN, RMR, CRR
Official Court Reporter
United States District Court
120 North Henry Street, Room 410
Madison, Wisconsin  53703
1-608-261-5708

1          (Called to order at 11:30 a.m.)

2          THE CLERK:  Case No. 19-CR-117, *United States of*

3    *America v. Adrian C. Gardiner*, called for a plea hearing.

4    May we have the appearances, please?

5          MS. ALTMAN:  Good morning, Your Honor.  The

6    United States appears by Elizabeth Altman.

7          MR. HARGROVE:  And Mr. Gardiner does appear

8    represented by counsel, Joshua Hargrove.  Mr. Gardiner is

9    appearing via Zoom from the Sauk County Jail and I'm

10   appearing from my office via Zoom.

11         THE COURT:  Very good.  I'll begin, since we are

12   here to proceed on a plea based on a written plea

13   agreement signed by the defendant on February 16th and

14   previously provided to the Court, just to confirm directly

15   with you, Mr. Gardiner, that you do in fact wish to

16   proceed via Zoom videoconference in light of the continued

17   risks of COVID-19 rather than exercise your right to

18   appear in front of me in person for purposes of your plea;

19   is that correct?

20         THE DEFENDANT:  Yes, that's correct, Your Honor.

21         THE COURT:  All right.  And I have your signed

22   waiver to the same effect.  So the only other thing I need

23   to do preliminarily is, because it doesn't appear this was

24   done in any earlier proceeding, I'll confirm that the

25   government has an obligation to disclose any favorable

1  evidence to the accused under *Brady v. Maryland* and its

2  progeny and need only have some weight and include both

3  exculpatory and impeaching evidence.  Failure to produce

4  that information could be -- or could result in sanctions,

5  including but not limited to adverse jury instructions,

6  dismissal of charges and contempt proceedings.

7      Ms. Altman, I'm certain that the government is aware

8  of its obligation.  I'll just ask you to confirm both your

9  awareness and whether or not the government has completed

10 that obligation.

11      MS. ALTMAN:  Yes, Your Honor, I am aware of our

12 obligation and I have complied with it and completed it.

13      THE COURT:  And, Mr. Hargrove, I assume you have

14 no reason to think that that has not occurred in this

15 case.

16      MR. HARGROVE:  No, I have had no reason.  I've

17 had a number of conversations with the government.

18      THE COURT:  Very good.  Then I will turn to you

19 again, Mr. Hargrove, just to confirm that you and your

20 client have received a copy of the indictment and ask

21 whether you wish it read aloud or waive reading.

22      MR. HARGROVE:  We do waive reading, Judge.  My

23 client and I have received it.  We've gone through the

24 indictment and clearly all the discovery and all the

25 necessary paperwork for this hearing.

1          THE COURT:  Very good.  Then if you would,

2    Ms. Altman, state the maximum and applicable minimum

3    penalties to which Mr. Gardiner would be subject if found

4    guilty of Count 1 of the indictment.

5          MS. ALTMAN:  Yes, Your Honor.  Count 1 charges a

6    violation of 18, 2251, which carries mandatory minimum

7    penalties of 15 years in prison and a five-year period of

8    supervised release and maximum penalties of 30 years in

9    prison, a $250,000 fine, a lifetime period of supervised

10   release, a $100 special assessment, an additional $5,000

11   special assessment pursuant to statute, and the entry of

12   an appropriate restitution order.

13         THE COURT:  And I note in the plea agreement that

14   there is a possibility, if the defendant met certain

15   standards, for an even higher mandatory minimum.  I

16   assume, by your not mentioning that, you have no reason to

17   believe those higher mandatory minimums and maximums will

18   apply here.

19         MS. ALTMAN:  I have no reason to believe that to

20   be the case, Your Honor.

21         THE COURT:  All right.  And, Mr. Hargrove, have

22   you had sufficient time to talk with your client about the

23   charges against him, the consequences of a plea of guilty

24   and any defenses that he may have to the charges?

25         MR. HARGROVE:  Your Honor, we have talked about

1    the charges, the maximums, the mandatory minimums,

2    possible defenses, we've talked about the government's

3    offer and we've gone through the discovery thoroughly and

4    discussed different trajectories, up to and including

5    trial and sentencing.

6          THE COURT:  All right.  Then, Mr. Gardiner, I'll

7    turn to you to confirm, my understanding is that you do

8    wish to proceed to enter a plea of guilty today.  Is that

9    correct?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Before asking for your plea, it's my

12   obligation to ensure that you're acting freely and

13   voluntarily, with an understanding of both the charges

14   against you as well as the consequences of a plea of

15   guilty, and also to ensure that there's a factual basis

16   for your plea.  So at this time I am going to ask that you

17   raise your right hand and be sworn by our clerk.

18         **ADRIAN C. GARDINER, DEFENDANT, SWORN**

19         THE COURT:  All right.  Then my first -- you can

20   lower your hand -- my first questions just go to assure

21   that you're capable and ready to proceed today.  Can you

22   tell me how old you are and how far you progressed in

23   terms of formal education?

24         THE DEFENDANT:  42 and graduated from high

25   school.

1          THE COURT:  All right.  And where did you attend

2    high school?  Where did you earn your degree?

3          THE DEFENDANT:  In City High School -- I mean,

4    North Kansas City High School.

5          THE COURT:  All right.  And I just want to make

6    sure we're clear.  Are you in that room by yourself?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And do you know if you're allowed to

9    remove your mask under these circumstances?  I'm not

10   requiring you to do that, but it may improve the

11   communication.  Thank you.

12      My question is whether or not you earned your high

13   school degree from a high school or whether you earned a

14   GED later.

15         THE DEFENDANT:  GED.

16         THE COURT:  Okay.  And that's fine.  When did you

17   leave high school?

18         THE DEFENDANT:  Junior year.

19         THE COURT:  Understood.  And any other training,

20   any other certifications, additional education beyond

21   earning your GED?

22         THE DEFENDANT:  Just first aid training I took in

23   2010.

24         THE COURT:  Sure.  Is there any reason why you

25   would have trouble understanding the proceedings today in

1  particular -- whether because of an illness, because

2  you're overly tired, because you're under the influence of

3  a prescription medication or elicit drugs or alcohol,

4  suffering from withdrawal -- any reason at all that you

5  would have trouble understanding the proceedings today?

6          THE DEFENDANT:  Maybe a little bit of anxiety,

7  but I'm fine, Your Honor.  Thank you.

8          THE COURT:  Yeah.  And I can kind of tell that by

9  your affect.  I can understand that there's an

10  understandable anxiety, given the nature of the charge and

11  the penalties involved here, but I want to make sure that

12  that isn't interfering with your ability to follow along

13  and to answer the questions that I ask with an

14  understanding and with honesty.

15          THE DEFENDANT:  Yes, yes, Your Honor.

16          THE COURT:  Yes, you're capable of doing that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  And if at any point you

19  need something repeated, you need me to rephrase a

20  question, just feel free to tell me and I will happily do

21  that.  All right?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Then let me begin by just confirming

24  that you've had sufficient time to talk with your counsel

25  about the charges against you, the facts the government

1  believes it could prove had this matter gone forward to

2  trial, the statutory penalties as well as the Federal

3  Sentencing Guidelines and how those guidelines could

4  impact your sentence.  Have you had a chance to talk about

5  all of those subjects with your counsel?

6          THE DEFENDANT:  Yes, yes, Your Honor.

7          THE COURT:  All right.  Then I'm going to begin

8  by just asking you to state your understanding of the

9  charge against you in Count 1 of the indictment; not

10 formally what it charges, but your basic understanding of

11 what you're being charged with doing.

12         THE DEFENDANT:  Knowingly being with somebody

13 under the age of 18.

14         THE COURT:  And that's certainly part of the

15 indictment, that you knowingly and intentionally used a

16 minor, identified in the indictment as Minor A, to engage

17 in sexually explicit conduct.  The charge, in addition, is

18 that you did that for the purpose of producing a visual

19 depiction and that the visual depiction of Minor A engaged

20 in sexually explicit conduct was actually transmitted

21 using means for interstate or foreign commerce; that is, a

22 computer or posting it online or some other means to

23 actually transmit it.  You understand that's the formal

24 charge against you?

25         THE DEFENDANT:  Yes, yes, Your Honor.

1       THE COURT:  And do you also understand that if I

2   were to accept your plea of guilty today and adjudge you

3   guilty that you could be subject to the maximum and

4   minimum penalties that were just reviewed by the assistant

5   U.S. attorney?

6       THE DEFENDANT:  Yes, Your Honor.

7       THE COURT:  And in particular, you understand

8   that by pleading guilty, you would be subject to a

9   mandatory minimum penalty of 15 years in prison and a

10  five-year period of supervised release; that is, I would

11  have no choice but to impose at least that sentence?  That

12  would be the minimum that you would receive by pleading

13  guilty today.  And you could face a maximum penalty of 30

14  years in prison, a $250,000 fine, supervised release for

15  life.  And in addition, you could face -- you would face a

16  hundred dollar special assessment, a $5,000 additional

17  special assessment, and entry of an appropriate

18  restitution order.  Do you understand that those are the

19  minimum and maximum penalties that you face if adjudged

20  guilty today?

21      THE DEFENDANT:  Yes, Your Honor.

22      THE COURT:  All right.  There is mention in the

23  plea agreement, although it doesn't sound as though either

24  your counsel nor defense -- nor the government's counsel

25  believe that it may apply, but if you would have been

 1  subject to a prior conviction involving similar sexual

 2  offenses against a minor, do you understand that you could

 3  be subject to a mandatory minimum penalty of 25 years in

 4  prison and a maximum penalty of 50 years in prison?

 5          THE DEFENDANT:  Yes, Your Honor.

 6          THE COURT:  All right.  In addition, do you

 7  understand that if you were to violate the terms and

 8  conditions of release that you could be subject to

 9  additional penalties, up to and including additional time

10  in prison?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  As for the sentencing

13  guidelines, those are first calculated by the probation

14  office.  They'll look at the number of points attributable

15  to your offense as well as any relevant conduct, which

16  would include the number of images or other conduct

17  related to the offense charged.  They'll give you credit

18  for accepting responsibility by pleading guilty, assuming

19  there's no reason to deny you credit for that.  They will

20  also consider your role in this offense, your prior

21  criminal history and any other factor that that office

22  deems relevant.

23     At that point a presentence report is issued that you

24  and your counsel can object to, as can the government's

25  counsel.  I would rule on those objections and then it is

1  my obligation to determine what the actual guideline range

2  is for purposes sentencing.  Do you understand that will

3  be the process?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  While that will be the process, do

6  you also understand that I am not bound to sentence you

7  within the guideline range, but could give you a sentence

8  down to the minimum of 15 years or up to the maximum of 30

9  years or, if it applied, to the even higher mandatory

10  minimum and the maximums?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  You are waiving a number

13  of valuable constitutional rights by pleading guilty

14  today.  And I'm confident that, because they are set forth

15  in paragraph 2 of the plea agreement, that you and your

16  counsel have already reviewed those rights.  I'm not going

17  to go through them in detail with you, but I do want to

18  confirm your basic understanding of the rights you're

19  giving up by pleading guilty, beginning with the most

20  fundamental right of all, which is to maintain your plea

21  of not guilty and to proceed to a jury trial.  Do you have

22  a general understanding as to what a jury trial would have

23  entailed?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  What's your general understanding?

1          THE DEFENDANT:  I take it to trial in front of a

2   jury and state my case of not guilty.

3          THE COURT:  And that's a fair summary.  That jury

4   that you described would be selected from a larger group

5   of people taken at random from the voting rolls in the

6   last presidential election, which is the western

7   two-thirds of the state by geography; that is, those who

8   voted in the Western District.  That group would then be

9   brought into the courtroom and you and your counsel and

10  the government's counsel would participate with me in

11  selecting the 12 individuals who would act as your jury.

12      At that point, as you say, you simply can maintain

13  your plea of not guilty.  The government would have to

14  come forward with proof of your guilt.  You could

15  challenge that proof through cross-examination by your

16  counsel or otherwise under the rules of evidence.

17      You could, as you alluded to, put on a defense,

18  although you're not required to make any showing.  If you

19  wished, you could subpoena witnesses, you could present

20  other evidence.  You could even take the stand yourself at

21  trial, although you could never be compelled to do so in a

22  criminal case.

23      Ultimately, it's up to the jury, in private, with no

24  one else present, to deliberate.  And only if all 12 agree

25  that the government has proven your guilt beyond a

1  reasonable doubt could you be adjudged guilty by this

2  Court.  Do you understand those are the rights you're

3  waiving when you waive your right to a jury trial?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  You also understand that by pleading

6  guilty today, you will be waiving your right against

7  self-incrimination as well as the right to require the

8  government to prove every element of the charges against

9  you?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Finally, do you

12  understand that once accepted, you will -- actually, I

13  should confirm that you are -- you have an understanding

14  that by pleading guilty to a felony offense that you may

15  be deprived of valuable civil rights going forward,

16  including the right to vote, to hold public office, to

17  serve on a jury, and the right to possess any kind of

18  firearm; not only own, but even possess any kind of

19  firearm into the future.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  All right.  Finally, do you

22  understand that you have a right to court-appointed

23  counsel, at government expense if necessary, through all

24  stages of this proceeding?

25          THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  All right.  Then at this time I'm

2   going to ask the assistant U.S. attorney to summarize the

3   basic terms of your written plea agreement.  I would ask

4   you to listen closely to her summary of the agreement

5   because, at the end of it, I'm going to ask you if it's

6   consistent with your understanding of that agreement.  All

7   right?  You're prepared to proceed, Mr. Gardiner, with

8   that summary?

9           THE DEFENDANT:  Yes, yes, Your Honor.

10          THE COURT:  Very good.  Ms. Altman, if you would.

11          MS. ALTMAN:  Thank you, Your Honor.

12      In addition to paragraphs 1 and 2, which the Court

13  has already reviewed with the defendant, the defendant

14  understands that if he is not a United States citizen,

15  this conviction may lead to his removal from the United

16  States.  He nevertheless affirms that he wants to plead

17  guilty, regardless of any immigration or removal

18  consequences that plea may entail.

19      The United States agrees that this guilty plea will

20  completely resolve all possible federal criminal

21  violations that have occurred in the Western District of

22  Wisconsin provided that the criminal conduct was known to

23  the United States and the conduct relates to the conduct

24  described in the indictment.  This agreement not to

25  prosecute is limited to those types of cases for which the

1  United States Attorney's Office has exclusive

2  decision-making authority.

3       The United States agrees to recommend that the Court

4  give the defendant the maximum available reduction for

5  acceptance of responsibility.  This is based upon facts

6  currently known to the United States and is contingent

7  upon the defendant continuing to accept responsibility

8  according to the factors set forth in the guidelines.

9  Additionally, this agreement to recommend a reduction for

10  acceptance is based on the defendant providing a full and

11  truthful accounting in the required financial statements

12  and his efforts to make agreed-upon restitution payments.

13  The United States agrees to recommend that this Court

14  impose a sentence of no more than 20 years.

15       The defendant understands that restitution in this

16  case is governed by statute.  The exact restitution figure

17  will be agreed upon by the parties prior to sentencing or,

18  if we are unable to agree, we will ask the Court to make

19  that determination.

20       The defendant agrees to complete a financial

21  statement and return it to the United States Attorney's

22  Office within one week of today's hearing.  He agrees that

23  this financial statement will be a full and truthful

24  accounting and will include all supporting documentation.

25  He also understands that, according to the paragraph --

1   according to paragraph 5, the United States' agreement to

2   recommend a reduction for acceptance of responsibility

3   will be based, in part, on his full and truthful

4   accounting and his efforts to make restitution.

5        Paragraphs 9, 10, 11, 12, and 13 deal with the

6   forfeiture of assets alleged in the indictment.

7   Essentially, the defendant agrees that he is the sole

8   owner of the property listed in the indictment.  He agrees

9   not to file a claim to the property in any proceeding and

10  he agrees to the forfeiture of the items without further

11  notice.  In the event that any party -- in the event that

12  any governmental agency having custody of the property

13  decides not to pursue forfeiture based on the minimal

14  value of the property, the defendant abandons the interest

15  he has in the property.

16       In the event of an appeal by either party, the United

17  States reserves the right to make arguments in support of

18  or in opposition to any sentence imposed by this Court.

19       Other than the discussion above with the 20-year

20  recommendation, the defendant understands that sentencing

21  discussions are not part of this plea agreement and that

22  he should not rely upon the possibility of any particular

23  sentence based upon discussions between his counsel and

24  the United States.

25       By his signature on this plea agreement, he

1  acknowledges his understanding that the United States has

2  made no promises or guarantees regarding the sentence that

3  will be imposed.  He acknowledges his understanding that

4  the Court is not required to accept any recommendations

5  made by the United States.  He acknowledges his

6  understanding that the Court can impose any sentence up to

7  and including the maximum penalties set out in paragraph 1

8  of this plea agreement and he acknowledges that this is

9  the only plea agreement in this case and that a plea

10 letter from December 20th of 2020 was rescinded.

11          THE COURT:  And, Mr. Hargrove, is the summary

12 just provided by the assistant U.S. attorney consistent

13 with your understanding of the basic terms of the written

14 plea agreement that the defense has entered into with the

15 government?

16          MR. HARGROVE:  It is consistent with my

17 understanding of the terms and it is consistent with what

18 I've discussed with my client, Mr. Gardiner.

19          THE COURT:  And, Mr. Gardiner, is it also

20 consistent with your understanding?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Did anyone make you any other promise

23 than contained in the written plea agreement itself in

24 order to get you to plead guilty today?

25          THE DEFENDANT:  No, Your Honor.

1           THE COURT:  Has anyone forced you or threatened

2   you to plead guilty?

3           THE DEFENDANT:  No, Your Honor.

4           THE COURT:  Has anyone told you that by pleading

5   guilty today, you're going to get a specific sentence from

6   this Court other than a sentence between the mandatory

7   minimum and the maximum that we've already discussed?

8           THE DEFENDANT:  No, Your Honor.

9           THE COURT:  And as you sit here today, do you

10  think you already know what your actual sentence is going

11  to be other than within that range?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  And I don't either.  That's what the

14  sentencing process is for.  I just want to make sure that

15  you're operating under the same understanding as I am.

16      Finally, do you understand that once accepted and

17  adjudged guilty, you are not free to withdraw your plea of

18  guilty, even if at the time of sentencing I determine not

19  to follow any recommendation that the government has said

20  it would make?

21          THE DEFENDANT:  Can you --

22          THE COURT:  Yeah.  Absolutely.  And it's a

23  mouthful and I just wanted to make sure it's clear.  In

24  this case the government has not only said it would

25  recommend, subject to certain conditions, a reduction in

1  the guidelines for acceptance of responsibility, but

2  actually to recommend a 20-year sentence.  And I want to

3  make sure you understand that once I accept your plea of

4  guilty today that you're not free to withdraw it, even if

5  at the time of sentencing I determine not to follow the

6  recommendation that the government has said it would make.

7        THE DEFENDANT:  Oh, yes, Your Honor.

8        THE COURT:  Okay.  Then at this time I'm going to

9  ask the assistant U.S. attorney to do one final thing and

10  that is to summarize the basic facts that the government

11  believes it could prove had this matter gone forward to

12  trial.  And I would again ask you to listen closely,

13  because at the end of that recitation, I'm going to ask

14  you if there's anything you believe the government could

15  not prove.  Ms. Altman.

16        MS. ALTMAN:  Thank you, Your Honor.  Had this

17  case gone to trial, there would have been testimony that

18  in July of 2019 a local foster mom called the police

19  reporting that Minor A, a girl born in August of 2006, had

20  been sneaking out of the foster home to meet with an adult

21  male.

22        During the course of the investigation, Minor A's

23  iPad was analyzed.  On it, law enforcement found a video

24  made at a Quality Inn in Madison.  The video showed the

25  victim lying on her back with her legs spread apart.  The

1   defendant was on top of her inserting his penis into her

2   vagina.  The video was sent to the victim on July 3rd of

3   2019.  Hotel records showed the defendant stayed at the

4   hotel on July 2nd of 2019.

5       After the defendant was arrested, he admitted coming

6   to Madison on July 2nd, reserving a room at the hotel and

7   having sex with the victim there.  He admitted using his

8   cell phone to videotape the sexual encounter and sending

9   the video to the victim.

10      And we'd ask the Court to take judicial notice that

11  Madison is in the Western District of Wisconsin.

12          THE COURT:  Ms. Altman, I apologize, but I did

13  not catch the age of Minor A.

14          MS. ALTMAN:  She was 12, Your Honor, at the time,

15  born in August of 2006.

16          THE COURT:  Thank you.  Let me ask first,

17  Mr. Hargrove, from what you know about the record in this

18  case, is there anything just reviewed by the assistant

19  U.S. attorney that you believe the government could not

20  prove at trial?

21          MR. HARGROVE:  Judge, no.  From my review of the

22  discovery and my conversation with my client,

23  Mr. Gardiner, there was nothing that was just stated on

24  the record that I believe the government could not prove

25  at trial.

21

1          THE COURT:  And, Mr. Gardiner, anything that you
2   believe the government could not prove?
3          THE DEFENDANT:  No, Your Honor.
4          THE COURT:  Then I am going to ask you to just
5   tell me, in your own words, what it is that you did, what
6   it is that you're proposing to plead guilty to.
7          THE DEFENDANT:  Being with somebody under the age
8   of consent.
9          THE COURT:  And it's correct that you had
10  arranged a rendezvous with Minor A, who was approximately
11  12 years of age, and that you videotaped your having
12  sexual intercourse with her?
13         THE DEFENDANT:  Yes.
14         THE COURT:  And it's also correct that in
15  creating that visual record that it was actually
16  transmitted using that cell phone or at least placed on a
17  cell phone?
18         THE DEFENDANT:  Yes.
19         THE COURT:  Was it also a video that you
20  maintained; in other words, did you have possession of it
21  as well?
22         THE DEFENDANT:  Yes, yes, Your Honor.
23         THE COURT:  And did you post it anywhere?
24         THE DEFENDANT:  No, Your Honor.
25         THE COURT:  Understood.  Any further allocution

1    that the government believes is necessary before I ask for

2    a plea?

3           MS. ALTMAN:  If you could just clarify, Your

4    Honor, that he did send it to the victim, which I

5    understand is not posting it anywhere, but that is an

6    element of the charge.

7           THE COURT:  Understood.  And is that the case,

8    that you had videotaped it yourself, but then forwarded it

9    to the victim, Minor A?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  And, Mr. Hargrove, any

12   reason why I shouldn't ask for your client's plea at this

13   time?

14          MR. HARGROVE:  Not at this time, Judge.

15          THE COURT:  Then, Mr. Gardiner, I will ask you

16   formally, how do you plead to Count 1 of the indictment?

17          THE DEFENDANT:  Guilty of it, Count 1.

18          THE COURT:  Based on my discussion with you and

19   your counsel, as well as the record in the case as a

20   whole, I am satisfied that you have entered a plea of

21   guilty knowingly and voluntarily, after adequate

22   opportunity to consult with your counsel, with an

23   understanding of both the charges against you and the

24   consequences of a plea of guilty.  I am also satisfied

25   that there's a factual basis for your plea.

1      And accordingly, I do find and adjudge you guilty of
2  Count 1 of the indictment and I accept the plea agreement
3  conditionally pending review of the presentence report.
4  That report will be due on May 7th, with objections due on
5  May 21st, and sentencing to proceed at 1 p.m. on June
6  15th, 2020.  I believe those dates were already disclosed
7  to counsel, but I'll hear if there's anything more for the
8  government at this time.

9           MS. ALTMAN:  Nothing, Your Honor.  Thank you.

10          THE COURT:  Anything more for the defense,
11 Mr. Hargrove?

12          MR. HARGROVE:  Nothing Judge.  Just for the
13 record, the Court did say -- I believe the Court said 2020
14 and I believe the Court meant --

15          THE COURT:  That's a serious problem and it's the
16 first time I've done that this year, which I'm surprised
17 by.  You're exactly right: June 15th, 2021, at 1 p.m.  And
18 I appreciate your clarifying that.

19      I just want to emphasize for you, Mr. Gardiner, that
20 I really have no preconceived notion of an appropriate
21 sentence here.  Obviously the guideline, or the maximum
22 and the mandatory minimums, are quite high.  So I begin
23 thinking about a sentence by looking at the presentence
24 report.  And I would encourage your cooperation in its
25 preparation, because that is where I begin.  However, I

1  would even more urge you to follow the advice of your

2  counsel, Mr. Hargrove, whose job it is to look out for

3  your interests, in terms your level of cooperation.

4      Ultimately, I'll consider any information that's

5  provided to me as long as I get it at least two days

6  before sentencing.  But the sooner I get it, the better it

7  can be vetted and the more confidence I can have in it.

8  So I would encourage your sharing that information with

9  the probation office even before its preparation of the

10  report, although you can supplement it even after its

11  preparation.  And I will see you for sentencing on June

12  15th of this year, as just discussed.

13      We are in recess.  Thank you all.

14          MS. ALTMAN:  Thank you, Your Honor.

15          THE DEFENDANT:  Thank you, Your Honor.

16          MR. HARGROVE:  Thanks, Judge.

17      (Adjourned at 12:05 p.m.)

18                        ***

19

20

21

22

23

24

25

1          I, CHERYL A. SEEMAN, Certified Realtime and Merit

2    Reporter, in and for the State of Wisconsin, certify that

3    the foregoing is a true and accurate record of the

4    proceedings held on the 25th day of March, 2021, before

5    the Honorable William M. Conley of the Western District of

6    Wisconsin, in my presence and reduced to writing in

7    accordance with my stenographic notes made at said time

8    and place.

9    Dated this 5th day of November, 2021.

15                           _____
                                        /s/

16                           Cheryl A. Seeman, RMR, CRR
                             Federal Court Reporter

23   The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means unless
     under the direct control and/or direction of the
24   certifying reporter.